ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
DEC 3 2004
U.S. COURT OF FEDERAL CLAIMS

120 DELAWARE AVENUE, LLC and
LAWLEY SERVICE, INC.,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 04-1733C

## COMPLAINT

Plaintiffs, for their Complaint against defendant, allege as follows:

1. Plaintiff 120 Delaware Avenue, LLC ("Delaware") is a New York limited liability company, with its principal place of business located in Buffalo, New York.

2. Plaintiff Lawley Service Inc. ("Lawley") is a New York corporation, with its principal place of business located in Buffalo, New York. Collectively, Delaware and Lawley are referred to herein as "plaintiffs."

3. Defendant United States of America ("defendant") is a sovereign federal government principally located in Washington, D.C., but with offices, including agency offices, throughout the United States, including in Buffalo, New York.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter and venue is proper in this Court pursuant to 28 U.S.C. §§1346(a)(2), 1491(a).

## FACTUAL BACKGROUND

5. In this action, the plaintiffs seek reimbursement from defendant for damages caused by defendant and its authorized agents - the United States General Services Administration ("GSA") and the United States Army Corps of Engineers (the "Army Corps") - in failing to condemn, take title to, and pay just compensation for property located at 120 Delaware Avenue, Buffalo, New York (the "Property"), that Delaware owns, and in which Lawley is a tenant. Except where otherwise specified, references are made interchangeably herein to "defendant," the "GSA" and the "Army Corps."

6. As detailed below, the aforesaid damages were the direct, natural and probable result of defendant's intentional invasion of plaintiffs' substantial and legally protected property interests, including not only the real estate Property identified above, but also incidents such as *e.g.,* rental income, personal property and fixtures, as well as Delaware's fee and Lawley's leasehold interests.

7. The GSA initially advised Lawley of its intent to proceed with site acquisition of the Property by written notification dated February 3, 2003, a copy of which is attached as Exhibit "A." Specifically, the GSA advised that it intended to commence the site acquisition process in March of 2003, and subsequently to initiate construction on a new United States Courthouse facility in the last quarter of 2004. (Ex. "A").

8. By correspondence dated July 10, 2003, a copy of which is attached as Exhibit "B", the GSA notified Delaware that it had completed its preliminary acquisition survey and that it intended to proceed with official acquisition of the Property through eminent domain.

9. On September 26, 2003, the Army Corps provided Lawley with an Official 90-Day Notice to Vacate Premises (the "90-Day Notice"), which required tenants to vacate the Property no later than May 1, 2004. A copy of this correspondence is attached as Exhibit "C". The 90-Day Notice also purports to set forth Lawley's entitlement to payments and other relocation assistance, in

accordance with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (the "URA"), 42 U.S.C. §4601 *et seq.,* and established August 13, 2003 as the effective date for relocation assistance. (Ex. "C", p.1).

10. By correspondence dated November 18, 2003, a copy of which is attached as Exhibit "D", plaintiffs' attorneys notified the GSA of several issues raised by the GSA's requirement that the Property be completely vacated by May 1, 2004, including *e.g.*, that Delaware expected its tenants to begin leaving the Property shortly after January 1, 2004 in order to comply with the 90-Day Notice. (Ex. "D").

11. Upon receiving the 90-Day Notice, the plaintiffs began to investigate alternate business locations, as part of a broader plan to relocate their business in accordance with, and reasonably relying on, defendant's representations and requirements. For example, Lawley conducted substantial negotiations and investigations, including the hiring of architects, engineers and property management entities in the Buffalo, New York area, in a comprehensive effort to secure adequate replacement office facilities for its 120 employees by May 1, 2004.

12. In good faith and reasonably relying on the GSA's representations, Delaware assisted its existing tenants in terminating their leases and making arrangements to vacate the Property in order to ensure full compliance with the 90-Day Notice. Indeed, by February of 2004, approximately 95% of Delaware's tenants had vacated the Property or provided notices of intent to vacate on or before the GSA's May 1, 2004 deadline.

13. On or about February 10, 2004, plaintiffs' counsel notified the GSA in writing (a copy of which is attached as Exhibit "E"), that tenants occupying over 95% of the total square footage of the Property had advised plaintiffs that they would be vacating the premises on or before May 1, 2004, as required by the 90-Day Notice. Among other things, plaintiffs' correspondence also notified the GSA that if it failed to take title to the Property on or before April 30, 2004, plaintiffs



HARRIS BEACH LLP
ATTORNEYS AT LAW

would pursue compensation for damages caused by the GSA's failure to take the property by April 30, 2004.

14. By correspondence dated February 13, 2004, a copy of which is attached as Exhibit "F", the Army Corps advised plaintiffs that the latest date to vacate the Property had been delayed nine (9) months - from May 1, 2004 until February 1, 2005 - due to a delay in funding for the construction of the new United States Courthouse.

15. More than five (5) months thereafter - by correspondence dated July 27, 2004 (a copy of which is attached as Exhibit "G") - the GSA again changed course, notifying plaintiffs' attorneys that it would not acquire the Property in accordance with its prior representations, despite the fact that the overwhelming share of leasehold tenants had already vacated the Property, in accordance with, and reasonably relying on, the 90-Day Notice.

16. To date, the defendant has failed to compensate Delaware or Lawley for the damages proximately caused by defendant and its authorized agents, although plaintiffs have made due demands therefor.

## CAUSE OF ACTION FOR INVERSE *(DE FACTO)* CONDEMNATION PURSUANT TO AMENDMENT V OF THE UNITED STATES CONSTITUTION

17. The preceding paragraphs are repeated and realleged with the same force and effect as if set forth fully herein.

18. Upon information and belief, the GSA and the Army Corps acted at all relevant times as authorized by the defendant, including the United States Congress.

19. The Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." (U.S. CONST. amend. V).

20. The defendant did not formally condemn plaintiffs' Property. Rather, by its actions and failures to act, including the foregoing, the defendant directly effected a taking of plaintiffs' Property but failed to provide just - and indeed, any - compensation to plaintiffs therefor.

21. Upon information and belief, there is no administrative or regulatory recourse by which plaintiffs may obtain the relief sought herein.

22. Upon information and belief, defendant's actions and failures to act, including the foregoing direct invasions of plaintiffs' substantial property interests, are permanent and/or inevitably recurring, and have proximately caused actual, concrete and particularized damages to each of the plaintiffs' aforesaid interests.

23. Upon information and belief, the defendant's intentional invasions of plaintiffs' protected property interests appropriated a benefit to defendant (and were purportedly also for the public's use and/or benefit) at plaintiffs' expense, and have preempted the plaintiffs' rights to enjoy and utilize the Property for an extended period of time.

24. The just compensation to which plaintiffs are entitled includes, without limitation, all past, present and prospective damages. For example, in addition to the fair market value of the Property - which, upon information and belief, exceeds $4.5 million dollars - the plaintiffs incurred substantial damages that, upon information and belief, were proximately caused by defendant's actions and failures to act, such as the GSA's 90-Day Notice.

25. Reasonably relying on representations by defendant and its authorized agents, Delaware's tenants terminated their leases (in many or all cases before the *scheduled* termination date), and/or declined to renew their leases at the Property. Accordingly, Delaware's damages include rents lost under existing leases and loss of future rents. Upon information and belief, these damages alone exceed Two Hundred Thousand Dollars ($200,000).

26. As a proximate result of defendant's actions and failures to act, the Property itself suffered a diminution in value *e.g.,* from the GSA's 90-Day Notice, which led not only to early termination and non-renewals of leases, but also created a *cloud of condemnation* that made the Property less marketable *e.g.,* to prospective new tenants and potential purchasers and/or investors.

27. Both plaintiffs have incurred and continue to incur damages proximately caused by defendant's actions and failures to act, including *e.g.:* relocation expenses such as search fees; professional fees, including for the services of attorneys, appraisers and engineering services; and time spent by plaintiffs' professionals working on problems and issues caused by defendant's actions and failures to act. *See e.g.* URA §4654, 49 C.F.R. §24.107.

28. Since service of the 90-Day Notice in September of 2003, Delaware - despite its diligent efforts - has been unable to secure new or renewed leasehold tenants for the Property, due to the ongoing cloud of condemnation caused by defendant's protracted eminent domain proceedings. The lost revenues and vacancies caused by defendant were then exacerbated by defendant's extension of the acquisition date from May 1, 2004 until February 1, 2005. This prolonged delay by defendant has rendered the Property virtually unrentable and unmarketable from September of 2003 through the present. Defendant has not formally acquired the Property through eminent domain, but its actions and failures to act constitute a compensable taking of the Property under the Fifth Amendment.

29. Upon being notified by the Army Corps that it had to vacate the Property by May 1, 2004, Lawley entered into negotiations with Benderson Development Company ("Benderson") in order to secure replacement space within the timeframe dictated by defendant. After Lawley had spent significant sums as part of this process *e.g.*, conducting due diligence regarding specific locations with Benderson between late September of 2003 and February of 2004, the Army Corps notified plaintiffs that the deadline for vacating the Property had been moved to February of 2005;



HARRIS BEACH
ATTORNEYS AT LAW

several months later, GSA advised plaintiffs that defendant was not proceeding to acquire title "at the present time." (*See* Exs. "F", "G"). Defendant's actions required Lawley – which (1) is the anchor tenant in the Property, and (2) is comprised of the same principals as Delaware – to discontinue its negotiations with Benderson, as Lawley could not afford to be obligated on two (2) leases. By these actions alone, the defendant, upon information and belief, proximately caused damages to Lawley in excess of One Hundred Thousand Dollars ($100,000.00).

30. Accordingly, Lawley is also entitled to reimbursement of its reasonable expenses incurred in searching for such replacement business locations, including actual reasonable travel and transportation costs, extra costs for meals and lodging, time spent in searching at the reasonable rate of displaced employees' salaries or earnings, and broker, real estate and/or other professional fees deemed necessary to locate a replacement business site. *See e.g.* URA §4622, 49 C.F.R. §24.303.

31. In addition, plaintiffs are entitled to just compensation for defendant's taking, destruction and/or devaluation of fixtures and other permanent equipment that are included among plaintiffs' protected interests in the Property.

WHEREFORE, plaintiffs respectfully request:

A. an amount to be determined but which, upon information and belief, exceeds Five Million Dollars ($5,000,000); and

B. such other and further relief as the Court may deem just and proper, including without limitation, interest, reasonable attorneys' fees and the costs and disbursements of this action.

Dated: November 30, 2004
Pittsford, New York

HARRIS BEACH LLP

Edward H. Fox
John T. Refermat, Of Counsel
Attorneys for Plaintiffs
99 Garnsey Road
Pittsford, New York 14534
Telephone: (585) 419-8800
Facsimile: (585) 419-8811

L:\JAH\120 Delaware Avenue LLC\11-12-04 Fed Complaint.doc

GSA

GSA Northeast & Caribbean Region

FEB 3 2003

Mr. Christopher D. Ross
Lawley Insurance
120 Delaware Ave.
Buffalo, New York 14202

Re: Proposed US Courthouse
Buffalo, NY

Dear Mr. Ross:

Dave Sengbush, Director of Strategic Planning for the City of Buffalo asked that I contact you to give you an update on our plans for the construction of a new Federal Courthouse in Buffalo.

The Courthouse is planned to be located on Niagara Square on the block bounded by West Mohawk St., Delaware Ave and Niagara Street. We are currently awaiting authorization to proceed with design and site acquisition phase of this project. If all goes according to plan we expect to begin the site acquisition process in March. At that time the Deputy Director of our Realty Services Division, Mr. John Marcic will contact you to commence negotiations.

Our current schedule also shows construction start planned for the last quarter of 2004, which for us is the first quarter of Fiscal Year 2005. As you may be aware all phases of federal construction are a result of congressional appropriations. While we can provide you with our current schedule, it is always subject to the congressional budget process.

Mr. Marcic will be contacting you in March, however if you have any questions or wish to discuss this further, please contact him on 212 264 4212.

Sincerely,

Arnold Feinsilber
Project Manager
Property Development Division
Public Buildings Service

cc: Dave Sengbush-Director, Strategic Planning

U.S. General Services Administration
26 Federal Plaza
New York, NY 10278
www.gsa.gov

GSA

GSA Northeast & Caribbean Region

**Certified Mail - Return Receipt Requested**
**#7000 1670 0012 6726 4791**

1 0 JUL 2003

Mr. Christopher D. Ross
120 Delaware LLC
120 Delaware Avenue
Buffalo, New York 14202

RE: Multi-Tenant Office Building
110-120 Delaware Avenue

Dear Mr. Ross:

The United States General Services Administration (GSA) has identified parcels of land within the perimeter of West Mohawk Street, Niagara Square, Niagara Street, Delaware Avenue and South Elmwood Avenue to be used for the construction of a new federal courthouse. This project requires the acquisition of the property located at 110-120 Delaware Avenue, Buffalo, New York.

GSA has completed its preliminary acquisition survey and a fair market value appraisal of this property. The subject property consists of a multi-tenant office building on a 0.55-acre site within the Central Business District of the City of Buffalo. Occupants include a number of law firms, and a courtyard café. Lawley's Service (owner/occupant) occupies approximately 34 percent of the property.

An appraisal was prepared by GAR Associates, Inc., 2399 Sweet Home Road, Amherst, New York. According to the appraisal, the highest and best use of the property, as improved is for the continued use as a multi-tenant office building with potential for development as an office, courthouse, or government building.

Having considered all approaches to determine fair market value, equal weight was placed upon the "income capitalization" and "sales comparison" approaches to determine the fair market value of the property. The final estimated fair market value of the subject property is $2,500,000.

Public Law 91-646, the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, as amended, Sec.301, directs the head of the Federal agency acquiring the property to establish an amount which he believes to be just compensation therefore and make a prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value of such property.

There are several advantages of selling your property to the United States Government. The Government will pay the cost of surveys, title searches, environmental audits, deed preparation, recording fees and revenue stamps. A full cash payment of the purchase price will be made on the day of closing.

Accordingly, based upon the above, enclosed for your consideration is a Contract to Sell Real Property, GSA Form 1226, in the amount of $2,500,000.00, for the full fee simple interest in the 0.55 acres of land free and clear of any leasehold interests. Please carefully evaluate this contract and respond in writing within ten days of receipt. Should you have any questions or wish to discuss this offer, please feel free to contact me at 212 264 4212.

In the near future, all tenants on the property will receive a letter concerning their relocation rights and benefits under the above referenced law.

In closing, thank you for your time and consideration in this matter.

Sincerely,

John N. Marcic
Contracting Officer
Public Buildings Service

Enclosure

REFERENCE
2PE-03-2.100-B

# CONTRACT TO SELL REAL PROPERTY

The undersigned, hereinafter called the "Vendor," who represents that he (she) (it) is the owner of the real property described below, hereby for himself (herself) (itself), his (her) heirs, executors, administrators (its), successors and assigns, agrees to convey to the United States of America and its assigns, in accordance with the terms and conditions set forth herein, the land, together with the buildings and improvements thereon, unless specifically excepted, and all rights, hereditaments, easements, and appurtenances thereto.

The real property which the Vendor agrees to convey to the United States of America and its assigns is located in:

| CITY | COUNTY | STATE |
|---|---|---|
| Buffalo | Erie | New York |

as shown by the attached plat and more particularly described as follows:

Multi-Tenant Office Building
110-120 Delaware Avenue
SBL#111.450-4-2.100
Buffalo, New York

The Vendor covenants and agrees to convey to the United States of America and its assigns the indefeasible fee simple title to the above-described land subject only to the following outstanding rights in third parties: (If "none," so state)

See Attachment A

The Vendor specifically reserves and excepts the following rights and interests in the above-described property: (If "none," so state)

None

The Vendor and the spouse, if any, of the Vendor, by signing below, agrees to join in any deed to the United States, and agrees to convey said real property to the United States of America and its assigns in consideration of the sum of

Two Million and Five Hundred Thousand Dollars****************************** dollars ($ 2,500,000.00

which amount shall be paid at the time the title to the property becomes vested in the United States.

The Vendor further agrees that the United States of America shall have 15 days to indicate its acceptance of the contract price and the terms and conditions herein, by mailing or delivering a copy of this contract signed by a duly authorized representative of the United States, to the Vendor at the address indicated below.

| NAME AND ADDRESS OF VENDOR (Include street address, city, state & ZIP code) | ACCEPTANCE OF OFFER TO SELL REAL PROPERTY |
|---|---|
| | Date: ______ |
| | The offer of the Vendor contained herein is hereby accepted for and on behalf of THE UNITED STATES OF AMERICA |
| SIGNED, SEALED AND DELIVERED THIS DATE: ______ | |
| By: ______ Vendor (Signature) | BY: ______ Contracting Officer (Signature) |
| By: ______ Vendor's Spouse (if any) (Signature) | ______ (Title) |

# TERMS AND CONDITIONS OF CONTRACT

**1. SURVEY WITH PRICE ADJUSTMENT IF LESS AREA.** The description of the property is subject to such modifications as may be necessary to conform to a survey of the property to be made by and at the expense of the United States. In the event that the property to be conveyed has an area less than indicated by the dimensions given in the description (clear, building space, exclusive of sidewalks, etc.), at the election of the United States an equitable reduction shall be made in the amount of the purchase price. The United States is not obligated to conclude the purchase of an area less than the described.

**2. SATISFACTORY TITLE AND TITLE EVIDENCE.** In order for the land to be acquired by voluntary conveyance, the title must be satisfactory to the Attorney General of the United States. The United States will defray the expenses incident to the preparation and recordation of the deed and obtaining of title evidence. In the event that the title to the property should be unsatisfactory, the Vendor agrees to deliver or cause to be delivered to the United States, at the Vendor's expense, such deeds, releases, affidavits, or other title instruments as the Attorney General may require to cure the title defects. Should the Vendor fail to cure the title defects within sixty (60) days (or such extended period as the Attorney General may allow) after receipt of written notice of such defects, the United States may elect either to terminate this contract by giving written notice of termination to the Vendor, or it may condemn the property as provided in paragraph 4 hereof. If the United States should give such notice of termination, the contract and the obligations incurred thereunder shall be deemed terminated as of the date of such notice without liability by the United States.

b. The title when conveyed to the United States shall be clear of all mineral rights and interests, easements, restrictions, and leases, except those which may be acceptable to the United States. All judgments, taxes, assessments, liens or encumbrances of any sort, existing or inchoate, shall be satisfied. However, it shall not be necessary to discharge liens and mortgages until such time as the transfer of title to the Government is made. The Vendor will be reimbursed by the United States for the pro rata portion of prepaid real property taxes which are allocable to a period subsequent to the date of vesting title in the United Sates, or the effective date of possession of the property by the United States, whichever is earlier. The United States will defray the penalty costs for prepayment of any preexisting recorded mortgage entered into in good faith encumbering the property.

**3. DEED.** Title to the property shall be conveyed to the United States by a general warranty deed, which shall be satisfactory to the Attorney General, except that instruments of conveyance by states, municipal corporations, fiduciaries, and persons acting solely in a representative capacity need not contain general warranty covenants. If otherwise satisfactory to the Attorney General. The purchase price recited in the deed shall be the actual consideration paid by the United States. The deed will be prepared by the United States and recorded at its own expense. The Vendor shall, however, obtain and affix to the deed documentary revenue stamps required by law. The Vendor will be reimbursed by the United States for such transfer taxes.

**4. CONDEMNATION PROCEEDINGS.** The United States has the right to acquire the property by institution of condemnation proceedings in the appropriate Federal court having jurisdiction. The Vendor agrees to cooperate with the United States in the prosecution of such condemnation proceedings and expressly consents that this contract to sell real property can be used as a basis for stipulation therein for the purpose of fixing the just compensation of the property. The Vendor further agrees that any and all awards of just compensation that may be determined by judgment of the court on behalf of any and all persons, corporations, or associations, other than the Vendor, shall be deducted from the purchase price, and the Vendor consents to the entry of such judgments, if any, and to accept the remaining balance as full and just compensation for the taking of the property described.

**5. DIMINUTION IN VALUE, LOSS OR DAMAGE.** The Vendor agrees not to do, or permit others to do, any act by which the value of the subject property may be diminished or whereby the title to the property may be encumbered. The Vendor further agrees that if any loss or damage to the property, or to any part thereof, should occur from fire or acts of God or any other cause prior to the vesting of satisfactory title to the property in the United States or delivery of possession, whichever occurs first, the loss or damage shall be borne by the Vendor, and the United States may, without liability, refuse to accept conveyance of the property, or may elect to accept conveyance based upon an equitable adjustment of the purchase price.

**6. ENTIRE SITE TO BE ACQUIRED.** If the property described in this contract is composed of more than one parcel of land, the United States shall be under no obligation to acquire any parcel until the Attorney General shall have rendered a favorable opinion on the title to all the parcels embraced in the entire tract. Where the United States determines that a portion of the property shall be acquired by condemnation proceedings, as provided in paragraph 4, the United States shall not be required to conclude the purchase of any parcel until the entire tract has been acquired.

**7. ATTEMPTED VARIATIONS.** No variation or departure from the terms of this contract will be binding on the United States unless previously agreed upon in writing by the Administrator of General Services or his duly authorized representative.

**8. OFFICIALS NOT TO BENEFIT.** No Member of or Delegate to Congress, or Resident Commissioner, shall be admitted to any share or part of this contract, or to any benefit that may arise thereupon; but this provision shall not be construed to extend to the contract if made with a corporation for its general benefit.

**9. COVENANT AGAINST CONTINGENT FEES.** The Vendor warrants that no person or selling agency has been employed or retained to solicit or secure this contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, except bona fide employees or bona fide established commercial or selling agencies maintained by the Vendor for the purpose of securing business. For breach or violation of this provision, the United States shall have the right to annul this contract without liability or in its discretion to deduct from the contract price the full amount of such commission, percentage, brokerage, or contingent fee.

**10. EXAMINATION OF RECORDS.** The Vendor agrees that the Comptroller General of the United States or any of his duly authorized representatives shall, until the expiration of three (3) years after final payment under this contract, have access to and the right to examine any directly pertinent books, documents, papers, and records of the Vendor involving transactions related to this contract.

**11. CLEARING OF SITE.** In the event the Vendor reserves the right to remove buildings or other improvements from the site, the Condition 11 shall apply.

a. The Vendor agrees, without expense to the United States and to the satisfaction of the custodian of the site, to remove the said buildings or other improvements down to ground level, and also to remove all tracks, poles, and wires (overhead or underground), all gas, water, and heating pipes, ducts, conduits, etc., and sewers crossing the site, or, in lieu of removal thereof, to plug at the lot lines any such pipes, ducts, conduits, or sewers.

b. Immediately after title to the land shall have vested in the United States (or if removal of reserved buildings or other improvements shall have created a dangerous condition, then immediately after such condition is created), the Vendor agrees, without expense to the United States, to rail off or cover, to the satisfaction of the custodian of the site, all open wells, cellars, or other excavations on the site.

c. Prior to the payment of the purchase price to the Vendor for the land, the Vendor agrees to furnish a good and sufficient bond in such amount as the United States may deem appropriate, guaranteeing the performance of all of the obligations of the Vendor relating to site clearance set forth above.

d. If the Vendor fails to comply with any of the obligations set forth in subparagraphs a, b, and c of these Special Provisions, the United States, or its duly authorized representative, may perform the work, sell or dispose of any buildings or other improvements, or any portion thereof, and collect from the Vendor or the obligors on the bond referred to in subparagraph c, herein, all costs incurred that are in excess of the proceeds of any such sale.

B

# Tax Map Location




Attachment "A"

DEPARTMENT OF THE ARMY
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P. O. BOX 17300
FORT WORTH, TEXAS 76102-0300

REPLY TO
ATTENTION OF:

September 26, 2003

Real Estate Division

SUBJECT: Relocation Assistance, New Federal Courthouse, Buffalo, New York

Mr. Christopher D. Ross, CPA
The Lawley Service
120 Delaware Avenue
Buffalo, New York 14202

Dear Mr. Ross:

**NOTICE OF ELIGIBILITY FOR RELOCATION ASSISTANCE**

As you are aware on August 13, 2003, the General Services Administration (GSA) submitted an offer to purchase the property at 120 Delaware Avenue, Buffalo, New York, in connection with the Federal Courthouse construction project. The Fort Worth District, Corps of Engineers is supporting GSA in the relocation aspect of this project.

It appears that you are entitled to payments and other assistance in accordance with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA). Please read the enclosed brochure entitled "Your Rights and Benefits As A Displaced Person". Your claim should be filed subsequent to your relocation. The effective date establishing your eligibility for relocation assistance is August 13, 2003.

**OFFICIAL 90-DAY NOTICE TO VACATE PREMISES**

Under the provisions of Public Law 91-646, the government is required to give you at least 90 days notice to vacate. You are hereby notified that you must vacate the subject premises no later than May 1, 2004. You will be required to negotiate lease terms with GSA, at the time of the Government acquisition.

Should you have any questions or concerns, please contact Mrs. Sylvia Cabello at 1-888-231-7751 or (817) 886-1117.

Sincerely,

Ike W. Wyatt
Chief, Management &
Disposal Branch
Real Estate Division

HARRIS BEACH LLP
ATTORNEYS AT LAW

99 GARNSEY ROAD
PITTSFORD, NEW YORK 14534
(585) 419-8800

November 19, 2003

Mr. John Marcic (2 PE-1)
Deputy Director
U. S. General Services Administration
26 Federal Plaza, Room 16-100
New York, New York 10278

**Re: 120 Delaware Avenue, Buffalo, New York**

Dear Mr. Marcic:

As you know we represent the owners of 120 Delaware Avenue in connection with the acquisition of that property by the General Services Administration for the Federal Courthouse construction project. I am writing to set forth the owner's position and to seek clarification on several issues relating to the acquisition of the property.

While we understand from the Department of Army Corps of Engineers, and specifically from their letter of September 26, 2003, a copy of which is enclosed, that the property is to be vacated on or before May 1, 2004. The owners' plans call for relocation within the Buffalo area to space which requires extensive refurbishment in order to be comparable to the space that they are vacating. To that end, they would like to be able to stay in the building up to and including August 31, 2004 so that it will not be necessary for them to make two moves. We hope that the GSA will be able to accommodate the schedule.

We also understand that there is an interest in closing on this property sometime in January, 2004. The owners are willing to close during January, obviously retaining their right to seek more in compensation than the $2.5 million dollars currently offered for the property which they will accept as advance payment. My partner in our Buffalo office, Herb Heimerl, will be handling the closing itself and communications relating to the specifics of the closing should be addressed to him at One

Grimsby Drive, Hamburg, New York, 14075-3764. You may reach him toll free at 1-800-950-2214.

During the time period between the closing and vacating of the building, the owners wish to continue building management. They would expect a market based fee for managing the building and, given the disruption caused by this acquisition, would expect to stay in their space rent free. The owners expect that their tenants will begin leaving the building shortly after the first of the year and believe it is important that the building be maintained properly until the owner and all tenants have vacated the premises.

As you may know, the owners have retained local real estate appraisers to value the property for this taking. Their found value is significantly higher than the GSA proposal. We have facilitated some conversations between the two appraisers and will be providing you with some comparable sales data which we hope at least will narrow the gap between the two reports.

Upon review of this letter, I would appreciate it if you would give me a call, so that we can discuss the various issues which will require resolution. I appreciate your consideration.

Sincerely,

Edward H. Fox

EHF:cam

cc: Herbert J. Heimerl, III, Esq.
Christopher Ross

T:\User\EHF\LETTERS\ehf10057.doc
11/19/2003 9:56:24 AM

ALL-STATE® LEGAL 800-222-0510 ED11 RECYCLED

HARRIS BEACH LLP
ATTORNEYS AT LAW

ONE GRIMSBY DRIVE
HAMBURG, NEW YORK 14075-3764
(716) 646-5050

February 10, 2004

COPY

Mr. John Marcic
U.S. General Services Administration
26 Federal Plaza
New York, NY 10270

Re: **120 Delaware Avenue, Buffalo, New York (the "Premises")**

Dear Mr. Marcic:

As you know, we represent the owners of 120 Delaware Avenue, LLC (the "Owners") in connection with the acquisition of the Premises by the General Services Administration ("GSA") for the federal courthouse construction project in Buffalo, New York. I am writing as a follow-up to our phone conversation of yesterday with respect to the Owners' position regarding the timing of the GSA's taking. While we understand from you and other contacts in the federal government that funding for the actual construction of the courthouse will not be available until 2006. The Department of Army Corps of Engineers issued a letter on September 26, 2003 to all tenants of the Premises that the Premises is to be vacated on or before May 1, 2004. To date, the Owners have received notice from tenants occupying over 95% of the total square footage of the Premises that they will be vacating on or before May 1, 2004. Should the GSA fail to take title to the Premises on or before April 30, 2004, the Owners will be forced to seek compensatory damages from the GSA due to the losses they would incur from the loss of revenue of these tenants.

The Owners are willing to close as soon as the GSA is ready, obviously retaining their right to seek more in compensation than the $2.5 million dollars currently being offered for the Premises, which they will accept as advance payment. I understand that you have ordered a new appraisal to be performed on the Premises and that it may take some time to get the results back, however, it is imperative that this does not hold up the closing beyond April of this year. I will be handling the closing and communications relating to the specifics of the closing should be addressed to me at the above address.

I appreciate the time you took in speaking with me on the phone yesterday as well as your candor regarding these issues.

Very truly yours,

Herbert J. Heimerl, III

HJH/kd

pc: John Refermat, Esq.
Edward Fox, Esq.

ALL-STATE® LEGAL 800-222-0510 ED11 RECYCLED

**DEPARTMENT OF THE ARMY**
FORT WORTH DISTRICT, CORPS OF ENGINEERS
P.O. BOX 17300
FORT WORTH, TEXAS 76102-0300

REPLY TO
ATTENTION OF

February 13, 2004

CESWF-RE-M

SUBJECT: Relocation Assistance, New Federal Courthouse, Buffalo, New York

Mr. Steven Fox
Attorney at Law
120 Delaware Ave., Suite 426
Buffalo, NY 14202

Dear Mr. Fox,

This letter is to notify you that the latest date to vacate your building has been changed from May 1, 2004 to February 1, 2005. The change is due to a delay in the receipt of funds for the construction of the New Federal Courthouse. Funding is available for acquisition and demolition of the buildings, and for payment of your relocation benefits. If you have already made plans to move before May 1, 2004, you may do so. Remember that your current lease is in full force and effect until the Government acquires the buildings. If you have questions or concerns, you may contact Mr. Rich Adamson at 1-888-231-7751 or (817) 886-1113.

Sincerely,

Richard F Adamson
for Ike W. Wyatt
Chief, Management and
Disposal Branch
Real Estate Division
Fort Worth District
US Army Corps of Engineers

ALL-STATE® LEGAL 800-222-0510 ED11 RECYCLED

U.S. General Services Administration
GSA Public Buildings Service

July 27, 2004

Mr. Herbert J. Heimerl, III, Esq.
Harris Beach
Attorneys At Law
99 Garnsey Road
Pittsford, NY 14534

RE: 120 Delaware Avenue, Buffalo, NY

Dear Mr. Heimerl:

In response to letter dated July 16th that was emailed to me be advised that I have had recent conversations with your client in which your client was advised that the US Government is not proceeding to acquire title to the referenced property by condemnation at the present time.

The Government remains willing to negotiate for the purchase of the property but needs an offer from the ownership supported by an appraisal to continue that process. Your client has indicated that he does not feel that there is any point in pursuing a negotiated sale to the Government.

At the present time the fiscal budget for next year is being worked on. We believe that budget will include funds for construction of the courthouse in Buffalo, and if that occurs we will move rapidly to acquire title to all of the properties on the block.

Sincerely,

Cary Scott Feld
Realty Specialist

Realty Services Division
100 S. Clinton Street, Box 7005
Syracuse, NY 13261-7005
315-448-0977